UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BONA FIDE DEMOLITION AND RECOVERY, LLC

CIVIL ACTION

VERSUS

NO: 07-3115

CROSBY CONSTRUCTION COMPANY OF LOUISIANA, INC., CROSBY CONSTRUCTION, LLC, CROSBY ENTERPRISES, LLC, V. CROSBY CONSTRUCTION, LLC, STEPHEN BARBUTO, LAVERNIE CROSBY, JR., THOMAS KARAM, CAPES INVESTMENT, LLC, JOHN E. SEAGO, SEAGO & CARMICHAEL, APLC, ANTHONY BARBUTO, WEATHERTIGHT ROOFING, INC., BALTIMORE INDUSTRIES, INC.,

SECTION: R(1)

**ORDER AND REASONS**

Before the Court are the motions to dismiss of defendants Continental Casualty Company, John E. Seago, and Seago and Carmichael, APLC. (R. Doc. 355 and 363). For the following reasons, the Court DENIES defendants' motions.

**I.   PROCEDURAL BACKGROUND**

**A.   Factual Background**

This suit arises out of a failed business relationship between plaintiff Bona Fide Demolition and Recovery, LLC and defendants Crosby Construction Company of Louisiana, Inc., Crosby Construction, LLC, Crosby Enterprises, LLC, V. Crosby

1

Construction, LLC, V. Crosby Company, LLC, Crosby Development Enterprises, LLC (together the "Crosby Entities"), and Lavernie Crosby, Jr. ("Crosby"). Also named as defendants are Capes Investments, LLC, Baltimore Industries, Inc., Thomas Karam, John E. Seago, Seago & Carmichael APLC, Stephen Barbuto, Anthony Barbuto, Weathertight Roofing, Inc., and Continental Casualty Company. (R. Doc. 228).

Because the motion before the Court is one to dismiss plaintiff's claims against three defendants under Rule 12(b)(6), the Court "must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). The following chronology is therefore stated as presented in Bona Fide's Third Amended Complaint. (R. Doc. 228).

The gravamen of Bona Fide's complaint in relation to Seago, Seago & Carmichael, and Continental, is that Seago participated in a fraudulent scheme with Crosby to induce Bona Fide to enter into a joint business venture with the Crosby Entities whereby Bona Fide invested money under false pretenses. More specifically, on November 21, 2006 representatives from Bona Fide met with Crosby and Seago, Crosby's legal counsel, in Greenwood Village, Colorado to discuss a potential joint business enterprise. The proposed enterprise was to compete for government contracts for demolition work in the greater New

2

Orleans area following Hurricane Katrina.  Crosby and Seago represented to Bona Fide that the Crosby Entities were minority owned, and thus uniquely capable of competing for government contracts that had been earmarked for minority owned businesses. *Id.*  Crosby and Seago further represented that the Crosby Entities had already received certain government contracts for demolition, but were seeking a business partner because they did not have the equipment or personnel to actually perform the work.  To help substantiate these claims, Crosby and Seago presented Bona Fide with an allegedly fraudulent "Syllabus" describing the Crosby Entities, fraudulent company overviews, and a fraudulent summary of the Crosby Entities' functional capabilities.  Financial information about the Crosby Entities, including information about revenue from existing government contracts, was also sent to Bona Fide by Karam, who did not attend the meeting in person.

As a result of the Colorado meeting, the parties agreed to go into business together.  Crosby and Seago assured Bona Fide that with a certain amount of financial assistance they would be able to set-up offices in New Orleans and hire licensed sub-contractors to ensure that any demolition contract the joint business enterprise received could be completed.  Bona Fide agreed to finance the business, and to do so (1) lent Crosby $20,000 as an advance, which Crosby personally guaranteed; (2)

3

signed a Letter of Intent with Crosby to enter into a joint business enterprise; (3) lent $105,000 to both CCCL and CC, which CE and Crosby guaranteed; and (4) paid CCCL $75,000 to "not have further contact or communication with other potential investors." (R. Doc. 228). Before Bona Fide transferred any money to Crosby or the Crosby Entities, Seago and Crosby outlined how the money was to be spent, and reassured Bona Fide that operations would start in short order. Pursuant to the terms of these agreements, Bona Fide wired the money, as per Karam's instructions.

After the initial financing was complete, Bona Fide sent several representatives to New Orleans, Louisiana. There, Seago and Crosby again made allegedly fraudulent assurances to Bona Fide that the Crosby Entities had functional offices, staff, and were already working under pre-existing government contracts. Assuaged by these assurances, Bona Fide moved both its equipment and personnel to New Orleans. Upon their arrival, however, Bona Fide learned that no functional offices existed, the Crosby Entities did not employ licensed and credentialed staff, and no minority government contracts had yet been acquired. Consequently, Bona Fide leased office space and set-up operations in Louisiana with the support of its accountant in Colorado.

In addition, Bona Fide learned after moving to New Orleans that Crosby was actively seeking additional investors, in contravention of the $75,0000 non-solicitation agreement. One

such investor was Stephen Barbuto, who ultimately became business partners with Crosby.  According to Barbuto, he, through Weathertight, owned 49% of all the Crosby Entities' after January 1, 2007.  Under Barbuto's business agreement with Crosby and the Crosby Entities, Barbuto leased over $2,000,000 in equipment for the Crosby Entities to perform demolition work in and around New Orleans.  Barbuto claims that this equipment was leased for exclusive use by Crosby and the joint enterprise he had personally formed with the Crosby Entities.

In early January 2007 Bona Fide learned another piece of bad news: the Crosby Entities were not licensed contractors in the State of Louisiana.  As a result, the Crosby Entities could not legitimately receive government contracts for demolition work.  The Crosby Entities had been allegedly working under the license of Jerry Moore, who is not named in this suit.  In response, Bona Fide representatives met with Crosby and Seago to discuss the potential return of their invested money.  At the meeting, Seago allegedly assured Bona Fide that it would receive its money back within days.  On January 15, 2007, the parties participated in a larger teleconference at which time Barbuto revealed to Bona Fide his own interest in the Crosby Entities.  Barbuto also promised to pay Bona Fide the money owed if Bona Fide agreed not to file suit against the Crosby Entities.  In spite of these initial efforts, Bona Fide did not receive any of its investment back.

In February 2007, Bona Fide broke its lease for housing and office space and moved its personnel and equipment back to Colorado.

**B.   Procedural Background**

Bona Fide initially filed this suit on June 4, 2007, alleging a general scheme to defraud by the named defendants. (R. Doc. 1). At that time Bona Fide named Crosby, Barbuto, and the Crosby Entities as defendants. *Id.* The complaint did not name Seago, Seago & Carmichael, or Continental. (R. Doc. 1). On February 20, 2009, this Court dismissed Bona Fide's complaint, without prejudice, because the Court lacked subject matter jurisdiction over the case as plaintiffs pleaded it. (R. Doc. 199 and 202). Bona Fide moved the Court to reconsider. (R. Doc. 203).

Before the Court reconsidered its February 20 Order, Bona Fide filed a second lawsuit. (No. 09-3095, R. Doc. 1). This time, Bona Fide's complaint named Seago and Seago & Carmichael as defendants. *Id.* In particular, the 2009 complaint alleged that "Seago, through Seago and Carmichael, represented Crosby, CCCL, CC, and CE at [a November 21, 2006 meeting]," and at that meeting "presented Bona Fide with a syllabus about CCCL, as well as Capability Statement and Company Overviews." (No. 09-3095, R. Doc. 1). The complaint also named Continental as the alleged

insurer of Seago and his law firm, Seago & Carmichael.[1]  *Id.*

Upon reconsideration, the Court granted Bona Fide time to amend its complaint to establish jurisdiction in the initial 2007 lawsuit.  (R. Doc. 219).  On April 28, 2009, Bona Fide did so by filing a Second Amended Complaint.  (R. Doc. 220).  The Second Amended Complaint named Seago, Seago & Carmichael, and Continental as defendants.  (R. Doc. 220).  After Bona Fide amended its complaint for a third time, the Court consolidated the two cases.  (R. Doc. 233).

Seago, Seago & Carmichael, and Continental now move the Court to dismiss Bona Fide's claims against them.  (R. Doc. 355 and 363).  The three defendants argue that Bona Fide's claims are prescribed under La. R.S. § 9:5605, which sets forth the applicable statute of limitations for legal malpractice claims.  *Id.*

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the

---

[1] The Complaint incorrectly refers to Continental as CNA Insurance Company.  (No. 09-3095, R. Doc. 1).

plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. The factual allegations must "raise a reasonable expectation that discovery will reveal evidence" of liability. *Twombly*, 550 U.S. at 556. "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 149-50.

**III. DISCUSSION**

**A.  Legal Malpractice Statute**

Defendants Seago, Seago & Carmichael, and Continental argue that Bona Fide's claims against them are untimely under La. R.S. § 9:5605. Section 9:5605 governs claims for legal malpractice, providing, in pertinent part that:

> No action for damages against any attorney at law duly admitted to practice in this state ..., whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed ... within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the

8

alleged act, omission, or neglect.

La. R.S. § 9:5605(A). The one-year and three-year periods of limitation in Section 9:5606 are peremptive, and as a result, their temporal limitations cannot be renounced, interrupted or suspended. *Reeder v. North*, 701 So.2d 1291, 1295-96 (La.1997).

The parties do not dispute that Bona Fide's claims against Seago, Seago & Carmichael, and Continental were filed more than one year after the alleged act, omission, or neglect took place. (R. Doc. 355, 363, 368). The parties' arguments instead focus on whether the lawsuit was filed within one year from the date that the alleged act was, or should have been, discovered. *Id.* Neither party, however, argues that Section 9:5605 should not apply to Bona Fide's claims against Seago, Seago & Carmichael, and Continental. Because the Court finds that the legal malpractice statute does not apply, and thus Bona Fide's claims are not perempted, it will not address the parties' arguments concerning the timeliness of Bona Fide's suit under Section 9:5605.

Section 9:5605 governs traditional legal malpractice suits, namely those between a client and his attorney. *See Broussard v. F.A. Richard & Associates, Inc.*, 732 So.2d 578, 583 (La. Ct. App. 1999). It does not apply to "all claims against attorneys in any capacity." *Davis v. Parker,* 58 F.3d 183, 188 (5th Cir. 1995). The statute's heading reads: "Actions for legal malpractice."

9

La. R.S. § 9:5605. Subsection A then elaborates on Section 9:5605's intended breadth by stating that an action for damages must arise "out of an engagement to provide legal services." La. R.S. § 9:5605(A). "Legal services" are those "predicated on traditional legal malpractice, but not more." *Davis,* 58 F.3d at 188. Legal malpractice claims are, generally, "those bases of liability that are unique to and arise out of the rendition of legal services. . . [or] primarily concern the quality of legal services." *Id.* at 188 (citing Ronald E. Mallen & Jeffery M. Smith, Legal Malpractice § 1.1, at 3 (3d ed. 1989)).

The Fifth Circuit addressed the applicable scope of Section 9:5605 in *Davis v. Parker*. 58 F.3d 183. There, an attorney's client filed suit against him alleging breach of contract, recission, and detrimental reliance unrelated to the attorney's legal representation. *Id* at 185. The court held that the statutes of limitation set forth in Section 9:5605 did not apply to the client's claims. *Id* at 189. In so doing, the Fifth Circuit reasoned that a lawyer's participation in a transaction does not automatically trigger the peremptive periods of Section 9:5605. *Id.* Because the client's complaint did not concern the quality of his legal representation, but rather the reneging on a promise, the Fifth Circuit vacated and remanded the case. *Id.* Moreover, in *Broussard v. F.A. Richard & Associates, Inc.,* 732 So.2d 578, the Louisiana Third Circuit Court of Appeals, building

10

on the reasoning in *Davis*, held that Section 9:5605 does not apply to actions brought by non-clients for damages arising from acts by an attorney representing the non-client's opponent. *Id.* at 585 ("The statute was not designed to protect every action of every attorney simply because the attorney was practicing law at the time the act or omission was committed.") *Id at* 583.

In this case, Bona Fide is not a client of John Seago, or Seago's law firm, Seago & Carmichael. And, Bona Fide's claims against Seago, Seago & Carmichael, and Continental do not concern the competency of Seago's legal representation. Rather, Bona Fide's claims against the three defendants allege damages arising from contractual breach (Count VII), and intentional or negligent misrepresentations (Count IX and Count X). (R. Doc. 228). Bona Fide's claims thus lie in tort and contract, not legal malpractice. While Seago is an attorney, the underlying claims were allegedly committed while Seago was the legal representative for Crosby and the Crosby Entities, not Bona Fide. The claims here are thus similar to those brought in *Broussard*--non-client claims against the opponent's legal counsel–and similar in substance to those brought in *Davis*-claims arising from a breach of contract and misrepresentation. Section 9:5605's statute of limitations did not apply to the respective plaintiffs' claims in *Broussard* and *Davis*, and the Court finds no reason why it should in this case.

11

## B. Prescription of Bona Fide's Claims

Even though Section 9:5605 does not apply in this case, the Court must still evaluate the timeliness of Bona Fide's claims under the more general prescriptive periods for contract and tort claims. Bona Fide asserts three claims against Seago, Seago & Carmichael, and Continental. (R. Doc. 228). The first alleges that the defendants violated the non-solicitation agreement signed by the parties at the Colorado meeting by seeking additional investors in January 2007. *Id.* (Count VII). Actions for damages predicated on breach of contract prescribe after ten years. *See* La. Civ. Code Art. 3499; *Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts*, 354 So.2d 192, 195 (La. 1978) (breach of contract action subject to ten-year prescriptive period). Here, the alleged breach occurred in January 2007 and therefore Bona Fide had until January 2017 to file suit. Bona Fide first filed suit against the three defendants in March 2009 (09-3095, R. Doc. 1), and amended its initial complaint in the 2007 action to add the three defendants in April 2009. (R. Doc. 228). Because both of these dates are well before the running of the prescriptive period under La. Civ. Code Art. 3499, Bona Fide's breach of contract claim against Seago, Seago & Carmichael, and Continental is not dismissed.

Bona Fide's second and third claims against the three defendants sound in tort. Bona Fide alleges that Seago, Seago &

12

Carmichael, and Continental made intentional misrepresentations about the Crosby Entities' abilities to perform demolition work in New Orleans, (Count IX), as well as the Crosby Entities' intent to repay Bona Fide for its debt. These tort claims are subject to the one-year prescriptive period in La. Civ. Code art. 3492. *See, e.g.*, *In re Ward*, 894 F.2d 771, 775 (5th Cir. 1990) ("The tort of negligent misrepresentation occurs when there is a breach of the duty to supply correct information to the plaintiff."); *Doucet v. Lafourche Parish Fire Protection Dist. No. 3*, 589 So.2d 517, 519 (La. Ct. App. 1991) ("Misrepresentation, intentional or negligent, is a delict; an unlawful act covered under LSA-C.C. article 2315. 'Delictual actions are subject to a liberative prescription of one year' under LSA-C.C. art. 3492."). This one-year prescriptive period begins to run from the date that injury or damage was sustained, or when a plaintiff had constructive notice of the tortious act. *Id. See also Trizec Props., Inc. v. United States Mineral Prods. Co.*, 974 F.2d 602, 607 (5th Cir. 1992) (discussing Louisiana's discovery rule as it applies to prescriptive articles 3492 and 3493 and noting that "the prescriptive period on a cause of action begins to run when the person in whose favor a cause of action exists knows or should have known of the existence of his cause of action"). "When a petition reveals on its face that prescription has run, the plaintiff has the burden of showing why

the claim has not prescribed." *Wimberly v. Gatch*, 635 So.2d 206, 211 (La. 1994).

In this case, Bona Fide received notice of the defendants' misrepresentations in January 2007 when it learned that the Crosby Entities did not maintain appropriate demolition licenses. (R. Doc. 228). Bona Fide then filed suit in June 2007, well before the expiration of the one-year prescriptive period. *Id.* Bona Fide did not identify Seago, Seago & Carmichael, or Continental as defendants, however, until it filed its second amended complaint in April 2009, more than two years after discovering the alleged intentional misrepresentations. (R. Doc. 220). Accordingly, whether Bona Fide's tort claims have prescribed against the three defendants depends on whether the applicable one-year prescriptive period has been interrupted or suspended.

Under Louisiana law, prescription may be interrupted by the filing of a suit in a court of competent jurisdiction. *See* La. Civ. Code art. 3463. Further, the interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. *See* La. Civ. Code art. 2324(C). Therefore, under Article 2324(C), Bona Fide's initial suit against the Crosby Entities, which was filed within the one-year prescriptive period, interrupted prescription against Seago, Seago & Carmichael, and Continental as joint tortfeasors.

This Court nevertheless initially dismissed Bona Fide's suit for want of jurisdiction, (R. Doc. 199), and thereafter permitted Bona Fide to amend its complaint to cure the jurisdictional defect. (R. Doc. 203). This raises the issue whether Bona Fide's amended complaint, which cured the jurisdictional defect, "relates back" under Federal Rule of Civil Procedure 15 to establish jurisdiction from the time Bona Fide first filed suit in June 2007. "The relation-back doctrine is controlled not by the caption given a particular cause of action, but by the underlying facts upon which the cause of action is based." *Watkins v. Lujan*, 922 F.2d 261, 265 (5th Cir. 1991). Under Rule 15, "an amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(C)(1)(B). The underlying facts in this case-the misrepresentations of the Crosby Entities' abilities to receive earmarked government contracts--arose out of the same "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Accordingly, Bona Fide's second amended complaint thus "relates back" for jurisdictional purposes, and consequently prescription was interrupted in June 2007 when Bona Fide first filed suit in a court of competent jurisdiction. *See Richard v. Reed*, 98 F.3d

1338, at *5 fn. 5 (5th Cir. 1996).

IV. **CONCLUSION**

For the foregoing reasons, the Court DENIES the motions to dismiss of Seago and Seago & Carmichael, (R. Doc. 363), as well as Continental. (R. Doc. 355).

New Orleans, Louisiana, this 21st day of December, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE