```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

BONA FIDE DEMOLITION AND RECOVERY, LLC            CIVIL ACTION

VERSUS                                            NO: 07-3115

CROSBY CONSTRUCTION COMPANY OF                    SECTION: R(1)
LOUISIANA, INC., CROSBY CONSTRUCTION,
LLC, CROSBY ENTERPRISES, LLC, V. CROSBY
CONSTRUCTION, LLC, STEPHEN BARBUTO,
LAVERNIE CROSBY, JR., THOMAS KARAM,
CAPES INVESTMENT, LLC, JOHN E. SEAGO,
SEAGO & CARMICHAEL, APLC, ANTHONY
BARBUTO, WEATHERTIGHT ROOFING, INC.,
BALTIMORE INDUSTRIES, INC.,

## **ORDER AND REASONS**

Before the Court is the motion to dismiss of Michael L. Feinstein and Michael L. Feinstein, P.A. (collectively "Feinstein").[1] For the following reasons, the Court DENIES Feinstein's motions.

## I.   BACKGROUND

On April 23, 2007, defendant Stephen Barbuto, a resident of Florida and New Jersey, and defendant Weathertight Roofing, Inc., a New Jersey company owned by Barbuto, hired Michael L. Feinstein, a Florida attorney, to represent them in connection with a matter entitled "Louisiana Project."[2] Barbuto and Weathertight hired Feinstein to secure investments each had made

---

[1]   (R. Doc. 392.)

[2]   (R. Doc. 410, Ex. B-1.)

with defendant Lavernie Crosby, Jr. and a host of companies that Crosby owned ("the Crosby Companies"), which are also named defendants in this suit.[3] In return for an ownership interest in the Crosby Companies, Barbuto allegedly leased over $3,000,000 in demolition equipment, and Weathertight allegedly agreed to fund up to $5,000,000 in future advances.[4] To secure these investments, Feinstein prepared a Future Advance Promissory Note, which Crosby signed on behalf of one of the Crosby Companies.[5] The Note signifies the Crosby Companies promise to repay Weathertight amounts up to $5,000,000.[6] Feinstein also prepared a Security Agreement and UCC-1 form to provide Weathertight a security interest in any equipment Crosby Construction owned in Louisiana.[7]

Plaintiff Bona Fide Demolition and Recovery, LLC, another investor in the Crosby Companies, filed this suit on June 4, 2007, alleging a general scheme to defraud by the named defendants, including Crosby, Barbuto, Weathertight, and the Crosby Companies.[8] Bona Fide alleges that Barbuto and

---

[3]  (R. Doc. 410, Ex. A, Barbuto Aff.)

[4]  *Id.*

[5]  (R. Doc. 410, Ex. D.)

[6]  (R. Doc. 410, Ex. C.)

[7]  (R. Doc. 410, Ex. D.; R. Doc. 392, Ex. A.)

[8]  (R. Doc. 1.)

Weathertight participated in the scheme through their business relationship with Crosby and the Crosby Companies.[9] On June 12, 2007, Barbuto and Weathertight hired Feinstein to represent them in the litigation.[10] Feinstein did not enroll *pro hac vice* in any proceeding before the Court, and Feinstein was never listed as a counsel of record for either Barbuto or Weathertight. Instead, Barbuto and Weathertight hired local counsel in Louisiana.

Barbuto and Weathertight answered Bona Fide's complaint and asserted cross claims against Crosby, the Crosby Companies, and other named defendants for breach of contract, fraud, and intentional misrepresentation.[11] Specifically, Barbuto and Weathertight alleged that Crosby breached his agreements with Barbuto, in part by failing to pay for the equipment that Barbuto had leased for the joint business venture.[12] In addition, Barbuto and Weathertight filed third party complaints against Feinstein.[13] Both alleged that Feinstein committed malpractice

---

[9] (R. Doc. 228.)

[10] (R. Doc. 410, Ex. B-3.)

[11] (R. Doc. 332.)

[12] The leased equipment has since been repossessed, and separate lawsuits have been filed against Barbuto and Weathertight to collect on the debts owed for the leased equipment.

[13] (R. Doc. 332; 365.)

3

by failing to reasonably secure the investments each made in Louisiana.[14] Feinstein now moves the Court to dismiss the claims against him under Rule 12(b)(2) because the Court lacks personal jurisdiction over him.[15]

## II.  PERSONAL JURISDICTION

When a nonresident defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction exists.[16] If the district court declines to hold a full evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction.[17] In making its determination without an evidentiary hearing, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[18] The allegations in the complaint must be taken as true unless controverted by affidavits, and all factual conflicts must be resolved in favor

---

[14] *Id.*

[15] (R. Doc. 392.)

[16] *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

[17] *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

[18] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

4

of the plaintiff.[19] "Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a *prima facie* showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion."[20]

A court has personal jurisdiction over a nonresident defendant if: (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment.[21] Because Louisiana's long-arm statute extends jurisdiction to the full limits of due process[22], a federal court sitting in Louisiana need determine only whether the exercise of its jurisdiction satisfies the requirements of constitutional due process.[23]

---

[19] *See Id.*

[20] *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1271 n. 12 (5th Cir. 1983) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)(cited in *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 333 (5th Cir. 1982))).

[21] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

[22] *See* La. Rev. Stat. § 13:3201(B),

[23] *See Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999); *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)("The Louisiana Supreme Court has held that the limits of the Louisiana long-arm statute are coextensive with constitutional due process limits.").

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice."[24] The defendant's connection with the forum state must be such that he "should reasonably anticipate being haled into court" there.[25]

Minimum contacts may give rise to either "specific" jurisdiction or "general" jurisdiction.[26] Specific jurisdiction exists when a plaintiff's cause of action arises from, or is related to, the nonresident defendant's minimum contacts in the forum state.[27] General jurisdiction exists if the defendant has engaged in "continuous and systematic" activities in the forum state.[28]

---

[24] *Latshaw*, 167 F.3d at 211 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[25] *Latshaw*, 167 F.3d at 211 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[26] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8-9 (1984).

[27] *Id.* at 414 n.8; *Wilson*, 20 F.3d at 647.

[28] *Helicopteros*, 466 U.S. at 415; *Wilson*, 20 F.3d at 647.

6

## III. DISCUSSION

### A. Feinstein's Minimum Contacts with Louisiana

Feinstein argues that he has not purposefully availed himself of the benefits and protections of Louisiana law through his contacts with Louisiana, and therefore the Court lacks jurisdiction over him.[29] Specifically, Feinstein contends that he is not licensed to practice law in Louisiana and does not conduct business in Louisiana or advertise in Louisiana.[30] Nor has he traveled to Louisiana.[31] Moreover, Feinstein argues that he performed the legal services at issue in Florida, not Louisiana, and that Barbuto and Weathertight hired local Louisiana counsel to represent them with respect to the Louisiana aspects of the business venture.[32]

Barbuto and Weathertight, on the other hand, argue that Feinstein's contacts with Louisiana are sufficient to confer jurisdiction over him.[33] In particular, Barbuto and Weathertight point to (1) Feinstein's preparation of loan security agreements, (2) filing of a UCC-1 Financing Statement in Louisiana, (3) extensive email, telephone, and mail correspondence with

---

[29] (R. Doc. 392.)

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] (R. Doc. 410.)

Louisiana counsel concerning litigation strategy during the initial stages of this suit, and (4) communication with Bona Fide's counsel in Louisiana in an effort to settle this suit.[34]

The Court finds that Feinstein had minimum contacts with Louisiana sufficient to support the exercise of personal jurisdiction over him. It is true that Feinstein, Barbuto and Weathertight formed their attorney-client relationship in Florida and that Feinstein did not visit Louisiana.[35] It is also true that an attorney's choice to represent a client in another forum does not automatically confer personal jurisdiction if "the claim does not arise from the lawyer's contacts with the forum."[36] But, Feinstein's physical presence in Louisiana is not determinative of minimum contacts.[37] Further, due process permits the assertion of jurisdiction when an out-of-state

---

[34] *Id.*

[35] (R. Doc. 392, Feinstein Aff.)

[36] *Wien Air*, 195 F.3d at 213; *see also Trinity Indus.*, 41 F.3d at 231("The bare existence of an attorney-client relationship is not sufficient."); *see also Austad Co. v. Pennie & Edmonds*, 823 F.2d 223 (8th Cir. 1987)(no jurisdiction over New York law firm in South Dakota when South Dakota client sued for legal malpractice occurring in Maryland).

[37] *See Burger King* v. Rudzewicz, 471 U.S. 462, 476 (1985); *see also Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233 (7th Cir. 1990)("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.").

defendant directs a single act toward the forum state that gives rise to the asserted cause of action.[38] Here, Barbuto and Weathertight hired Feinstein to protect their investments in the Louisiana companies Crosby owned.[39] Feinstein knew that his retainer agreement was for work in conjunction with a "Louisiana Project," and the collateral to be secured was in Louisiana.[40] That Feinstein's representation of Barbuto and Weathertight resulted in Feinstein's drafting a security agreement and filing a UCC-1 Financing Statement in Louisiana was not a mere fortuity. Further, Feinstein's filing of the UCC-1 Financing Statement in Louisiana allegedly gave rise to his clients' malpractice claim. Barbuto and Weathertight allege that Feinstein failed to properly securitize their investments in Louisiana.[41] Thus, his clients cause of action for malpractice arises from Feinstein's contacts with Louisiana and the alleged malpractice occurred in Louisiana because Louisiana is where the securitization failed.

The Fifth Circuit's decision in *Wien Air Alaska, Inc. v. Brandt* suggests that such conduct can amount to purposeful

---

[38] *Wien Air Alaska, Inc v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999)(citing *Calder v. Jones*, 465 U.S. 783 (1984) and *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993)).

[39] (R. Doc. 410, Ex. A.)

[40] (R. Doc. 410, Ex. A; R. Doc. 392, Ex. A.)

[41] (R. Doc. 332.)

availment of the forum's laws.[42] In that case, an Alaskan corporation based in Texas sued a German attorney in Texas state court, alleging fraud, fraudulent inducement, and breach of contract.[43] After the district court dismissed the case for lack of personal jurisdiction, the Fifth Circuit reversed and remanded, finding that personal jurisdiction existed over the German attorney.[44] In part, the Fifth Circuit said that

> when a lawyer chooses to represent a client in another forum, that in itself does not confer personal jurisdiction if the claim does not arise from the lawyer's contacts with the forum. *See Austad*, 823 F.2d at 226. However, when the claim arises from a breach of a fiduciary duty based on a failure to disclose material information, the fact that the lawyer continually communicated with the forum while steadfastly failing to disclose material information shows the purposeful direction of material omissions to the forum state.[45]

Further, the Court distinguished cases in which communications with the forum did not give rise to the cause of action: "[t]hese cases are thus distinguishable from the present case. When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."[46]

---

[42] 195 F.3d at 208.

[43] *Id.* at 210-11.

[44] *Id.*

[45] *Id.* at 213.

[46] *Id.* at 213. *Compare Austad*, 823 F.2d at 226 (no jurisdiction when South Dakota client sued New York law firm in

10

Feinstein's argues that his UCC-1 filing does not count as a contact by him and that it should be attributed to Barbuto and Weathertight.[47] This argument fails because the Fifth Circuit looks at the work the out-of-state attorney does in or directs to the forum to evaluate the attorneys' contacts for jurisdictional purposes.[48]

B.  **Exercise of Jurisdiction Is Fair and Reasonable**

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair."[49] Feinstein argues that the assertion of jurisdiction over him would be unfair because he did visit Louisiana and his contacts with Louisiana resulted from the "unilateral activity" of Barbuto and Weathertight, namely their

---

South Dakota for malpractice occurring in Maryland); *Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995)(no jurisdiction when New Hampshire client sued Virginia law firm for malpractice occurring in Florida); *Mayes v. Leipziger*, 674 F.2d 178 (2d Cir. 1982) (no jurisdiction when New York client sued California law firm in New York for malpractice occurring in California); *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7 (1st Cir. 1986)(no jurisdiction when New Hampshire client sued Massachusetts law firm in New Hampshire for malpractice occurring in Massachusetts).

[47]  (R. Doc. 392.)

[48]  *See Trinity Indus., Inc. v. Myers & Associates*, 41 F.3d 229, 230 (5th Cir. 1995)(finding jurisdiction over Illinois attorneys in Texas and considering court appearances in Texas and communications by mail and telephone to Texas during the course of the representation in the minimum contacts analysis).

[49]  *Wien Air*, 195 F.3d at 215.

decision to invest in the Crosby Companies in Louisiana.[50]

It is not by happenstance that Feinstein filed the UCC-1 Financing Statement in Louisiana. Feinstein's retainer agreement is for work related to a "Louisiana Project."[51] Feinstein knew that the Crosby Company collateral for Barbuto's and Weathertight's investments was located in Louisiana.[52] And, he knew that the law of secured transactions that applied to Feinstein's work was Louisiana law. Thus, it should have come as no surprise that Feinstein would have to file a UCC-1 Financing Statement in Louisiana when Barbuto and Weathertight retained Feinstein's services.

In addition, Feinstein has other contacts with Louisiana, including extensive email, telephone, and mail correspondence with Louisiana counsel related to the securitization of Barbuto and Weathertight's Louisiana investments, as well as the Bona Fide litigation. These contacts suggest that Feinstein's actions had foreseeable effects in Louisiana and the exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice."[53]

---

[50] (R. Doc. 392.)

[51] (R. Doc. 410, Ex. B-1)

[52] (R. Doc. 410)

[53] *Walk Haydel & Associates, Inc.* v. *Coastal Power Production Company*, 517 F.3d 235, 243, 245 (5th Cir. 2008)(discussing foreseeable effects in forum state).

The cases Feinstein relies on in support of his argument are distinguishable. In *We're Talkin Mardi Gras LLC*[54], a Texas client claimed that his Georgia attorney failed to give advice in communications from Atlanta to Texas. In dismissing the suit for lack of jurisdiction, the Court found that the malpractice did not arise out of any contact between the Georgia attorney and Louisiana, where the Texas client filed suit.[55] That is not the case here. Feinstein's alleged malpractice occurred in the forum state. Though their facts vary, a number of cases suggest that a plaintiff can sue his attorney where the malpractice occurs even if the plaintiff is not a resident of the forum.[56] Lastly, the case of *Busch v. Buchman, Buchman & O'Brien, Law Firm* is also distinguishable as it did not involve an out-of-state attorney's minimum contacts with a forum state, but rather with the United States because the suit was brought under a federal statute with a nationwide service of process provision.[57]

---

[54] 192 F.Supp.2d 635 (E.D.La. Feb. 25, 2002)(Fallon, J.)

[55] 11 F.3d 1255 (5th Cir. 1994).

[56] *See Austad*, 823 F.2d at 226 (malpractice not in forum state); *Sawtelle*, 70 F.3d at 1389 (same); *Porter v. Berall*, 293 F.3d at 1076 (same); *see also Alonso v. Line*, 846 So.2d 745 (La. 2003)(malpractice committed in forum-state); *Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach LLP*, 106 P.3d 74 (Kan. Ct. App. 2005)(tort committed in forum-state).

[57] 11 F.3d 1255, 1258 (5th Cir. 1994).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Feinstein's motion to dismiss for lack of personal jurisdiction.[58]

New Orleans, Louisiana, this 13th day of May, 2010.

_____Sarah Vance_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

[58] (R. Doc. 392.)