UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BONA FIDE DEMOLITION AND                    CIVIL ACTION
RECOVERY, L.L.C.


VERSUS                                      NO: 07-3115


CROSBY CONSTRUCTION COMPANY                 SECTION: R(1)
OF LOUISIANA, ET AL.



**ORDER AND REASONS**

In this fraud and breach of contract case, plaintiff Bona

Fide Demolition and Recovery, LLC ("Bona Fide") moves the Court

to vacate its September 27, 2010 order denying Bona Fide's motion

for reconsideration.[1]  In that motion, Bona Fide had asked the

Court to reconsider its February 1, 2010 order dismissing

plaintiff's claims against Capes Investment, LLC ("Capes").[2]

Bona Fide also moves the Court to sanction counsel for defendants

_____

[1]      R. Doc. 626 (motion to vacate); R. Doc. 617 (order
denying motion for reconsideration).

[2]      R. Doc. 457 (motion for reconsideration); R. Doc. 413
(order dismissing Capes).

Capes and Baltimore Industries ("BI") under Fed. R. Civ. P. 11.[3]
For the following reasons, plaintiff's motions are DENIED.

## I.   Background

The Court has stated the relevant background in its order
denying Bona Fide's motion for reconsideration, and it will
summarize that background only briefly.  Bona Fide alleges that
Capes and BI were part of a fraudulent business scheme that
induced it to form and invest in joint ventures with Crosby
Construction, LLC ("CC") and related companies (collectively, the
"Crosby Companies").  Bona Fide filed suit on June 4, 2007,[4] and
later amended its complaint to name Capes[5] and BI.[6]  Capes and BI
moved to dismiss, arguing that the Court lacks personal
jurisdiction over them because they do not have sufficient
contacts with Louisiana.[7]  Bona Fide argued in response that
Capes and BI form a single business enterprise ("SBE") with the

---

[3]    R. Doc. 623.

[4]    R. Doc. 1.

[5]    R. Doc. 220.

[6]    R. Doc. 228.

[7]    R. Doc. 318.

2

Crosby Companies and that the Crosby Companies' contacts with Louisiana can therefore be imputed to Capes and BI.[8]

On February 1, 2010, the Court held that BI and the Crosby Companies constitute a single business enterprise and denied BI's motion to dismiss.[9]  The Court granted Capes' motion to dismiss, however, holding that Capes does not form a single business enterprise with the Crosby Companies under the eighteen-factor test articulated in *Green v. Champion Ins. Co.*, 577 So.2d 249 (La. App. 1 Cir. 1991).[10]  First, the Court noted that although Capes owns a 46 percent interest in Crosby Enterprises, LLC ("CE"), which maintains an interest in Crosby Construction, common ownership is not dispositive of the SBE inquiry.  Second, the Court found that the evidence does not support plaintiffs' allegations that Thomas Karam, the president of BI and a board member of CE, maintained common control of the financial operations of Capes and the Crosby Companies.  Third, the Court found that, contrary to plaintiffs' assertions that Capes played a role in the alleged fraud, the evidence showed that Capes acted only as an investor in the Crosby Companies.  The Court concluded

---

[8]     R. Doc. 351.

[9]     R. Doc. 413.

[10]    *Id.*

3

that Capes' minority interest in CE, along with its sharing of office space with the Crosby Companies, were not probative of an SBE.  The Court therefore dismissed the claims against Capes.

On June 16, 2010, Bona Fide moved the Court to reconsider its February 1, 2010 ruling dismissing Capes.[11]  Bona Fide argued that reconsideration was justified under Fed. R. Civ. P. 60(b)(3), which allows the Court to relieve a party from an order on grounds of "fraud . . . misrepresentation, or misconduct by an opposing party[.]"  Bona Fide pointed to alleged inconsistencies in the testimony of various Crosby-related parties and in the documents those parties produced.  On September 27, 2010, the Court denied Bona Fide's motion for reconsideration.[12]  The Court found that the inconsistencies that Bona Fide identified constitute isolated inaccuracies, at most, and do not rise to the level of fraud, misrepresentation, or other misconduct for purposes of Rule 60(b)(3).

Bona Fide moved for leave to file a supplemental memorandum in support of its motion for reconsideration later in the day on September 27, 2010, after the Court had already denied the motion

---

[11]     R. Doc. 457.

[12]     R. Doc. 617.

4

for reconsideration.[13] The Court denied the motion for leave as moot.[14] Bona Fide now moves to vacate the Court's ruling denying its motion for reconsideration, for reasons stated in its proposed supplemental memorandum. Bona Fide also moves for Rule 11 sanctions against counsel for Capes and BI for not bringing his clients' alleged false statements to the Court's attention.

## II. Motion to Vacate

Bona Fide's motion to vacate is, in fact, a motion to reconsider the denial of its previous motion for reconsideration. Bona Fide asks the Court to vacate its September 27, 2010 order under Fed. R. Civ. P. 60(b)(2), which allows a party to obtain relief from an order because of "newly discovered evidence." To obtain relief under this provision, Bona Fide must first "show that 'with reasonable diligence' this evidence could not have been discovered sooner." *Bailey v. Cain*, 609 F.3d 763, 767 (5th Cir. 2010) (quoting Fed. R. Civ. P. 60(b)(2)). In other words, Bona Fide must show that it "exercised due diligence in obtaining the information." *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 744 (5th Cir. 2009) (quoting *Hesling v. CSX*

---

[13] R. Doc. 618.

[14] R. Doc. 638.

*Transportation, Inc.*, 396 F.3d 632, 639 (5th Cir. 2005)).
Second, Bona Fide must show that "the evidence is material and
controlling and clearly would have produced a different result if
present before" the order was issued.  *Id.* (quoting *Hesling*, 396
F.3d at 639).  "A judgment will not be reopened if the evidence
is merely cumulative or impeaching and would not have changed the
result." *Id.* (quoting *Hesling*, 396 F.3d at 640).

        Bona Fide asserts that it has obtained new evidence relating
to investments in Capes by Geoffrey Harkness, Alicia Harkness,
and Philip Karam.  According to Bona Fide, this evidence
indicates that the Harknesses and Philip Karam did not invest
directly in Capes.  Rather, Bona Fide asserts, the evidence shows
that the Harknesses and Philip Karam received their ownership
interests in Capes in exchange for the investments they made in
the Crosby Companies and other related entities before Capes was
formed.  In support, Bona Fide points to Geoffrey Harkness'
August 25, 2010 deposition, in which he states that he did not
write checks directly to Capes, but instead provided funds to
other entities and in exchange received an interest in Capes.[15]
Mr. Harkness also states in his deposition that Capes did not

---

[15]      R. Doc. 616, Ex. 1 at 47, 53-54, 96.

6

have a bank account,[16] which supports the proposition that Capes did not directly accept funds from investors.

This evidence cannot, however, be considered "newly discovered" for purposes of Rule 60(b)(2). That Capes lacked a bank account, and accordingly was not a repository of funds, has long been established. In his July 29, 2009 deposition, Geoffrey Harkness stated that Capes did not have any bank accounts.[17] He further stated at that time that he did not remember how the funds he invested reached Capes, nor did he remember whether he sent the funds directly to Crosby Construction.[18] In a deposition that also took place on July 29, 2009, Alicia Harkness stated that while she and her husband owned a portion of Capes, "the actual investment I think was in Crosby."[19] In its September 23, 2009 opposition to Capes' motion to dismiss, Bona Fide relied on these depositions in arguing that "even though Capes never had bank accounts and its members 'invested' money directly into separate Crosby entities, Capes allegedly invested

---

[16]   *Id.* at 47, 96.

[17]   R. Doc. 616, Ex. 20 at 22.

[18]   *Id.* at 23, 28.

[19]   R. Doc. 616, Ex. 2 at 33.

monies into other Crosby entities[.]"[20]  Further, in its June 16, 2010 motion for reconsideration, Bona Fide made the same argument regarding funds invested by Capes member Bruce Polekoff.[21]  Bona Fide has long had evidence that Capes did not have any bank accounts and that individuals received interests in Capes in exchange for investing in Crosby-related entities.  Bona Fide has presented that evidence to the Court on multiple occasions, and it cannot be considered "newly discovered."

Further, Bona Fide has made no effort to explain why it matters if some of these payments to Crosby-related entities were made before Capes was actually formed, as Geoffrey Harkness indicates in his August 25, 2010 deposition.[22]  Bona Fide has not demonstrated that evidence of the timing of these payments is controlling and clearly would have produced a different result as to the single business enterprise inquiry.  Moreover, Mr. Harkness also states in his August 25 deposition that "Capes . . . was the investment entity we used to invest money through."[23]  That statement is consistent with the Court's prior orders.  As

---

[20]   R. Doc. 351 at 23.

[21]   R. Doc. 457 at 7-8.

[22]   R. Doc. 616, Ex. 1, at 54.

[23]   *Id.* at 34.

the Court held on September 27, 2010: "To the extent that Capes' tax returns reflect funds that individuals believed they were investing in the Crosby Companies, that is not inconsistent with the Court's [February 1, 2010] finding that Capes served as a vehicle for individuals to invest in the Crosby Companies."[24] Further depositions may have uncovered new details, but they have not clearly undermined this finding.  Thus, Bona Fide is not entitled to relief on grounds of newly discovered evidence.

**Bona Fide's motion to vacate the denial of its previous motion for reconsideration is denied.  Bona Fide's motion is repetitious, as this is the third time it has raised these issues.  Counsel for Bona Fide is warned against further proliferation of baseless, repetitive motions.  If Bona Fide continues to file such motions, the Court will consider imposing sanctions, including attorney's fees.**

**III. Motion for Sanctions**

Bona Fide also argues that the Court should impose sanctions under Fed. R. Civ. P. 11 against Patrick H. Patrick, counsel for Capes and BI.  Rule 11 provides that when an attorney submits a pleading, written motion, or other paper to the court, he

---

[24]   R. Doc. 617 at 9.

certifies to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that (1) it is not being presented for any improper purpose, such as harassment, unnecessary delay, or increased costs of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information. Fed. R. Civ. P. 11(b). By signing a pleading, an attorney certifies that, among other things, he "has conducted a reasonable inquiry into the facts which support the document." *Childs v. State Farm Mutual Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994).

Bona Fide asserts that in his memorandum supporting Capes and BI's July 28, 2009 motion to dismiss, Mr. Patrick falsely stated, relying upon a declaration by Geoffrey Harkness, that "the sole contact between Baltimore Ind. and Louisiana was a single sale of cleaning products," that BI never "supplied any

services or performed any work in Louisiana," and that BI was
never "authorized to conduct business in Louisiana."[25]  Bona Fide
argues that, in fact, Thomas Karam performed accounting work
"through BI" for the Crosby Companies.[26]  According to Bona Fide,
this accounting work constitutes a contact between BI and
Louisiana and demonstrates that the statements in Patrick's brief
are false.

     Bona Fide has not argued that Patrick's brief was filed for
any improper purpose or that its contentions were unwarranted by
existing law.  Presumably, though it is not explicit on this
point, Bona Fide is arguing that the factual contentions in
Patrick's brief did not have evidentiary support.  Bona Fide
asserts, and Patrick does not dispute, that the 21 day "safe
harbor" provided by Rule 11(c)(2) has elapsed.

     Assuming that the accounting work that Karam did for the
Crosby Companies renders the statements in Patrick's brief false,
Rule 11 sanctions nonetheless are not justified in this matter.
Patrick states that shortly after he filed the motion papers on
July 28, 2009, he obtained transcripts of depositions, taken
prior to his involvement in the matter, which indicate that

----

[25]    R. Doc. 318 (motion to dismiss) (citing R. Doc. 318-2
(declaration of Geoffrey Harkness)).

[26]    R. Doc. 623-2 at 2.

11

Karam, on behalf of BI, performed accounting work for the Crosby
Companies.[27]  The Court has no reason to doubt Patrick's
statement that he did not have this information at the time he
filed the brief.  Nor can the Court conclude that Patrick's
investigation was insufficient because he did not uncover this
fact before filing the brief and instead relied on the
declaration of Geoffrey Harkness.  *See Smith v. Our Lady of the
Lake Hosp.*, 960 F.2d 439, 444 (5th Cir. 1992) (attorney's
reliance on client is a factor in determining whether attorney
made a reasonable factual inquiry).

The main thrust of Bona Fide's argument is that after
Patrick learned about the accounting services that BI provided to
the Crosby Companies, he still failed to acknowledge those
services and did not specifically admit that the statements in
Harkness' declaration are false.  Rule 11 does not impose
continuing duties, however, such as a duty to correct previously-
filed documents.  Rather, the Rule requires compliance with its
terms at the time a document is signed.  *Edwards v. General
Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998); *Thomas v.
Capital Sec. Services, Inc.*, 836 F.2d 866, 874 (5th Cir. 1988).
Rule 11 also requires that an attorney not repeat the false

---

[27]    R. Doc. 646 at 2.

statement in later filings, *Thomas*, 836 F.2d at 875, but there is no indication that Patrick did so.  To the contrary, Patrick later acknowledged the accounting services that BI provided to the Crosby Companies.  After receiving transcripts of the relevant depositions, Patrick noted in his September 9, 2009 supplemental memorandum that Karam and BI performed bookkeeping tasks for the Crosby Companies.[28]  The Court also noted this fact in ruling that BI and the Crosby Companies constitute a single business enterprise.[29]  The facts relating to these accounting services do not justify imposing Rule 11 sanctions on Mr. Patrick.

Bona Fide also argues that Geoffrey Harkness falsely stated in his declaration that Capes was a passive investor in the Crosby Companies.  Bona Fide also asserts that Karam's declaration contains a similar false statement.[30]  Bona Fide argues that later depositions contradict these statements, but again, Rule 11 does not impose a continuing duty to correct previously-filed documents.  Moreover, as discussed *supra*, the Court has specifically found that Capes was indeed a passive

---

[28]    R. Doc. 341 at 2-3.

[29]    R. Doc. 413 at 20.

[30]    R. Doc. 318-3 (Karam's declaration).

13

investor in the Crosby Companies.  These statements do not justify imposing Rule 11 sanctions on Mr. Patrick.

**IV.  Conclusion**

    For the foregoing reasons, plaintiff's motion to vacate and motion for sanctions are DENIED.

    New Orleans, Louisiana, this <u>28th</u> day of October, 2010.

                  _____
                         SARAH S. VANCE
             UNITED STATES DISTRICT JUDGE

14