```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

BONA FIDE DEMOLITION AND RECOVERY,              CIVIL ACTION
LLC


VERSUS                                          NO: 07-3115


CROSBY CONSTRUCTION COMPANY OF                  SECTION: R(1)
LOUISIANA, INC., CROSBY
CONSTRUCTION, LLC, CROSBY
ENTERPRISES, LLC, V. CROSBY
CONSTRUCTION, LLC, STEPHEN BARBUTO,
LAVERNIE CROSBY, JR., THOMAS KARAM,
CAPES INVESTMENT, LLC, JOHN E.
SEAGO, SEAGO & CARMICHAEL, APLC,
ANTHONY BARBUTO, WEATHERTIGHT
ROOFING, INC., BALTIMORE INDUSTRIES,
INC.


## ORDER AND REASONS

In this fraud and breach of contract case, defendant Baltimore Industries seeks summary judgment on Bona Fide Demolition and Recovery LLC's RICO claim.  Because the Court finds there is no genuine issue as to plaintiff's failure to show a pattern of racketeering activity, the Court grants the motion.


**I.   BACKGROUND**

This suit arises out of a failed business relationship between plaintiff Bona Fide and defendants Lavernie Crosby and the Crosby Companies.  Specifically, Bona Fide claims a violation of the Racketeering Influenced and Corrupt Organizations Act

1

(RICO), naming as defendants Crosby, Thomas Karam, Baltimore Industries, Inc. (BI), Crosby Construction Company of Louisiana (CCCL), Crosby Construction LLC (CC), Crosby Enterprises, LLC (CE), Capes Investment, LLC (Capes), Crosby Development Enterprises, LLC (CDE), V. Crosby Construction, LLC (VCC) and V. Crosby Construction Company, LLC (VCCC).[1]

Bona Fide asserts that BI was part of a fraudulent scheme to induce claimants to form a joint business venture with the Crosby Companies and invest money.  The proposed business was to compete for and perform government contracts for demolition work in New Orleans following Hurricane Katrina.[2]  On November 21, 2006, representatives from Bona Fide met with Crosby and Seago, Crosby's legal counsel, in Greenwood Village, Colorado.[3]  Karam prepared and emailed a syllabus, capability statement and company overview to Bona Fide outlining, among other things, the licenses and credentials allegedly held by CCCL.[4]  Bona Fide asserts that the parties agreed on the specific purposes for which Bona Fide's investment would be used.[5]  Bona Fide contends that as per

---

[1]  R. Doc. 228.  On February 1, 2010, the Court granted Capes' motion to dismiss for lack of personal jurisdiction.  R. Doc. 413.

[2]  R. Doc. 228 at 8.

[3]  *Id.* at 5-6.

[4]  *Id.* at 7, 12.

[5]  *Id.* at 9.

2

Karam's written instructions, it wired funds across state lines.[6]

On November 27, 2006, Sol Saltzman and other Bona Fide representatives traveled to New Orleans to meet with Crosby. While in New Orleans, Bona Fide learned that the Crosby Companies had no functional offices or office equipment.[7]  Bona Fide alleges that after inducing it to invest money in the Crosby Companies, BI and Karam diverted the invested funds for unauthorized purposes.[8]  Bona Fide asserts that defendants have engaged in similar acts since 2005, both before and after their relationship with Bona Fide, and that several other individuals were victims of similarly fraudulent acts by the defendants.[9]

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as

---

[6]  *Id.*

[7]  *See id.* at 14; R. Doc. 634-4.

[8]  R. Doc. 228 at 10-11.

[9]  *Id.* at 38-40.

to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element

4

of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**III. DISCUSSION**

Bona Fide claims that Crosby, Karam, BI, CCCL, CC, CE, Capes, CDE, VCC and VCCC violated RICO, 18 U.S.C. § 1962(a)-(d). BI moves for summary judgment on Bona Fide's RICO claim, asserting that Bona Fide cannot establish the necessary elements of a civil RICO claim.  Specifically, BI argues that Bona Fide cannot establish a "pattern of racketeering activity" or an "enterprise" separate from the persons to be held liable.  BI also asserts that Bona Fide lacks RICO standing and that it cannot establish proximate causation.  Finally, BI alleges that Bona Fide has failed to assert a claim against BI under 1962(c).

Regardless of the subsection, RICO claims under section 1962 have three common elements: "1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the

acquisition, establishment, conduct or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)).

To allege a "pattern of racketeering activity," a plaintiff must show that the defendant committed two or more predicate offenses that are (1) related and (2) amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Predicate offenses include violations of certain state and federal laws, including wire fraud and mail fraud statutes. 18 U.S.C. § 1961(1).

Bona Fide asserts that the predicate acts of wire fraud and mail fraud provide the basis for the pattern of racketeering needed for a RICO violation.[10] The elements of wire fraud are "(1) a scheme to defraud, and (2) the use of, or causing the use of, wire communications in furtherance of that scheme." *United States v. Rush*, 236 F. App'x 944, 947 (5th Cir. 2007). Proof of a scheme to defraud requires a showing that the defendant possessed a fraudulent intent. *Id.* "The elements of mail fraud are (1) a scheme to defraud; (2) use of the mails to execute the scheme; and (3) the specific intent on the part of the defendant to defraud." *United States v. Smith*, 46 F. App'x 225, 2002 WL 1939843, at *2 (5th Cir. July 16, 2002). "Among other things,

---

[10] R. Doc. 682 at 17.

both RICO mail and wire fraud require evidence of intent to defraud, *i.e.*, evidence of a scheme to defraud by false or fraudulent representations." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000).

Bona Fide asserts that defendants have engaged in the predicate acts of mail fraud and wire fraud since 2005, both before and after its relationship with Bona Fide.[11]  Bona Fide alleges that in addition to itself, defendants have engaged in acts of mail fraud and wire fraud in investment transactions involving (1) Bruce Pollekoff; (2) Arnold Fainman; (3) Kitphan Sriswat; (4) Harvey Weiner; (5) Kenneth Benjamin; (6) Stephen Barbuto; and (7) John Barton.[12]  Specifically, Bona Fide alleges that the defendants induced these individuals to wire monies, across state lines, after mailing, faxing, and/or emailing these investors and/or partners fraudulent misrepresentations about the work history, experience, and contracts possessed by certain Crosby entities.[13]  Bona Fide states that these are the "victims" it has discovered, but that it "believes" there are additional victims.[14]  In support of its assertion that these individuals are victims of predicate offenses, Bona Fide cites its statement

---

[11]   *Id.* at 18.

[12]   *Id.* at 17-18.

[13]   *Id.* at 18.

[14]   *Id.* at 18 n.107.

of uncontested material facts, specifically fact No. 19 and supporting citations and the deposition of George Panzeca, a certified public accountant.[15]

Bona Fide's statement of uncontested facts does not evidence that the "discovered victims" were victims of any predicate offenses.  Fact No. 19 states:

> In February and March 2006, Karam solicited various individuals to invest monies into CC and/or TruSource; Karam had these individuals wire these monies directly to CC's bank account in Maryland.  These individuals never invested monies, capital, or anything of value into Capes.  Moreover, these individuals never invested monies after 2006.  Despite that, Karam prepared Schedules K-1, as part of Capes' 2007 income tax return, that were issued to these individuals.[16]

The stated facts merely provide that wire transfers were made to CC by the alleged victims and that K-1s were issued to these individuals from Capes.  This does not show that the "discovered victims" were victims of any predicate acts of wire fraud or mail fraud.  The stated facts do not provide any evidence of a scheme to defraud or that false material representations were made to these individuals.

The footnote corresponding to the cited uncontested fact cites the deposition of Bruce Pollekoff.  Pollekoff's deposition does not demonstrate that he or any of the other "discovered victims" were provided any false information about the work

---

[15]  *Id.*

[16]  R. Doc. 616-2 at 4.

history, experience or contracts possessed by the Crosby entities. Pollekoff testifies that Karam prepared and provided him with an "Executive Summary" containing a Plaquemines Parish projection contract, a hauling dirt to levies projection contract, CC organization documents, a promissory note and a W-9.[17] Pollekoff does not say that any of the documents provided to him, or any of the other alleged victims, contained false information. At most, Pollekoff's deposition shows that he and his clients loaned and/or invested money in CC and that he individually did not receive a return on his loan and/or investment. To the extent that Bona Fide relies on evidence that Pollekoff and other investors received K-1s from Capes for their investments in CC and TruSource, Pollekoff does not testify that he was unaware or disapproved of the distribution of K-1s to himself or the other investors. If anything, Pollekoff's deposition provides evidence that he was a willing participant in the decision to issue K-1s from Capes to these investors. In addition, Pollekoff's statement that Karam told him there was an "unbelievable opportunity in New Orleans" is too vague to amount to a fraudulent misrepresentation and is not demonstrably false.[18]

Similarly, Panzeca's deposition does not demonstrate that

---

[17]   R. Doc. 616-8, Ex. 5 at 7.

[18]   *Id.* at 6.

any fraudulent representations were made to those who loaned and/or invested in CC.  Panzeca provides no evidence of the representations made to the "discovered victims" to induce them to loan and/or invest in Crosby entities.  Further, Panzeca provides no evidence of any representations made as to work history, experience and contracts held by the Crosby entities.  In addition, even in discussing Capes' tax returns, Panzeca testified that because he had not conducted a thorough review of the tax returns, he could not form an opinion as to whether the tax returns were correct or incorrect.[19]  Panzeca further testified that while the financial records for the Crosby entities were incomplete and there were some "red flags," he would characterize the financial data as "sloppy at best and perhaps wrong."[20]  Panzeca specifically stated that he could not say "whether it was wrong intentionally or wrong accidentally."[21]  While citing to Panzeca's deposition, Bona Fide provides no explanation as to how Panzeca's testimony creates a genuine issue as to the elements of mail fraud or wire fraud, or more generally as to a "pattern of racketeering activity."

As to Stephen Barbuto, Bona Fide has provided documentation establishing that Barbuto made wire transfers to Crosby

---

[19]  R. Doc. 682-5, Ex. E at 13.

[20]  *Id.* at 14.

[21]  *Id.*

Companies.[22] Bona Fide has pointed to no evidence, however, to establish that fraudulent representations were made to Barbuto. The mere fact that Barbuto made wire transfers to Crosby entities is clearly insufficient to create a genuine issue that defendants have committed the predicate act of wire fraud. *See St. Paul Mercury Ins. Co.*, 224 F.3d at 441 ("[W]ire fraud require[s] evidence of intent to defraud."). Similarly, Bona Fide has pointed to no evidence to show that John Barton was the victim of any predicate offense of wire fraud or mail fraud.

The Court finds that the evidence offered does not create a genuine issue that acts of mail fraud and/or wire fraud were committed in relation to Pollekoff, Fainman, Sriswat, Weiner, Benjamin, Barbuto or Barton. Any alleged predicate acts as to these individuals cannot form the basis of or contribute to a "pattern of racketeering activity." *Cf. Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139-40 (5th Cir. 1992) (considering only those alleged predicate acts of wire fraud and mail fraud that were sufficiently pleaded in determining whether there was a pattern of racketeering activity); *Kwan-Tai Corp. v. Mastercraft Printers, Inc.*, No. 00-3160, 2001 WL 487329, at *6 (E.D. La. May 7, 2001) ("This Court however finds that there are insufficient pleadings in regards to wire fraud for it to serve as a predicate act."). Therefore, the Court will consider only

---

[22] R. Doc. 616-33; R. Doc. 616-37.

11

the alleged predicate acts directed towards Bona Fide for purposes of analyzing a "pattern of racketeering activity."

A RICO plaintiff establishes the "relatedness" element by showing that the predicate criminal acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. In this case, Bona Fide alleges that defendants committed acts of mail fraud and wire fraud. Specifically, Bona Fide has provided evidence that defendants emailed a prospectus to Bona Fide containing material misrepresentations and procured two wire transfers of funds as per Karam's instructions received via facsimile. Bona Fide has also provided evidence that its investment in the Crosby entities was diverted for unauthorized purposes. The Court finds that the alleged acts are related in that the fraudulent use of mail and wires was aimed at procuring Bona Fide's investment in Crosby entities and that the money Bona Fide wired was then used for unauthorized purposes. Therefore, the first prong of the pattern requirement is satisfied.

The requirement of "continued criminal activity" reflects Congress's concern with "long-term criminal conduct." *Id.* at 242. Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a

12

threat of repetition." *Id.* at 241.  A closed period of continuity may be demonstrated by a series of related predicates extending over a substantial period of time.  *Id.* at 242.  An open period of continuity refers to a "specific threat of repetition extending indefinitely into the future" or "that the predicates are a regular way of conducting defendant's ongoing legitimate business."  *Id.* at 242-43.

It is not clear whether Bona Fide is asserting closed- or open-ended continuity.  Bona Fide has not, however, offered sufficient proof to establish continuity under either theory.

A closed period of continuity may be demonstrated by a series of related predicates extending over a substantial period of time.  *Id.* at 242.  The alleged predicate acts involving Bona Fide occurred over less than eight weeks, from November 21, 2006 until early January 2007.[23]  Despite Bona Fide's claim that the defendants have committed acts of wire fraud and mail fraud since 2005, Bona Fide has provided the Court with no evidence to support this assertion.  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement."  *Id.*  Predicate acts occurring over eight weeks do not satisfy the closed-ended scheme continuity requirement.  *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (finding that sixteen

---

[23] R. Doc. 682 at 3.

months was insufficient to establish closed-ended continuity); *United States v. Hively*, 437 F.3d 752, 761 (8th Cir. 2006) (describing closed-ended continuity as related acts continuing over a period of time lasting at least one year); *United States v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *9 (5th Cir. 2001) (finding that 20-21 months was a sufficient period of time to establish continuity, but noting that seven months was an insufficient period of time); *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 611 (3d Cir. 1991) ("[T]welve months is not a substantial period of time."); *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (finding no continuity when predicate acts with a single goal occurred over a one-year period).

The Court finds that Bona Fide also has failed to assert open-ended continuity. First, the alleged predicate acts, defendants' alleged fraudulent procurement of Bona Fide's investment through the use of mail and wire, do not by their nature project into the future with a threat of repetition. *Compare United States v. Walker*, 348 F. App'x 910, 911-12 (5th Cir. 2009) (finding that elected judges' ten acts over two-and-a-half months established continuity when, despite the short duration, there was "no doubt that a jury could reasonably infer from the frequency and escalating seriousness of the defendants' crimes that their 'past conduct ... by its nature projects into

the future with a threat of repetition'"). Bona Fide's relationship with the defendants terminated in January 2007. Bona Fide has provided no evidence that the defendants continue to actively seek new investors. *See Ochs v. Shearson Lehman Hutton Inc.*, 768 F. Supp. 418, 426 (S.D.N.Y 1991) (finding no open-ended continuity where there was no allegation that the partnership was seeking new subscribers). Further, "[t]he fact that the enterprise has a continuing corporate existence is not relevant to the continuity of the alleged pattern of racketeering activity." *Wardlaw v. Whitney Nat'l Bank*, No. 94-2026, 1996 WL 185781, at *4 (E.D. La. April 18, 1996). "*H.J.*'s illustrations of open-ended continuity indicate a requirement of far more than a hypothetical possibility of further predicate acts." *Edmonson & Gallagher v. Alban Towers Tenants Assoc.*, 48 F.3d 1260, 1264 (D.C. Cir. 1995) (internal quotations omitted). Bona Fide's unsupported allegation that the defendants committed predicate acts against others after the Bona Fide-Crosby relationship terminated is insufficient to establish a threat of repetition extending indefinitely into the future. In addition, there is no evidence that the predicate acts constitute defendants' "regular" way of conducting their ongoing legitimate business. Therefore, the Court finds Bona Fide has not alleged an open-ended pattern of racketeering activity.

The short-term criminal conduct shown by Bona Fide is simply

not the type of activity RICO was intended to address. *See Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996) (quoting *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991)) ("Short-term criminal conduct is not the concern of RICO."). Bona Fide has adduced no evidence that would permit a reasonable fact finder to conclude that the defendants have engaged in a pattern of racketeering activity within the meaning of the civil RICO statute. Accordingly, the Court finds that no genuine issues of material fact exist as to Bona Fide's civil RICO claim.

IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS Baltimore Industries' Motion for Summary Judgment to dismiss Bona Fide's Civil RICO claims.

New Orleans, Louisiana, this 4th day of November, 2010.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE